IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JORDAN ACQUISITIONS GROUP LLC,      )
d/b/a AMERICAN AUTO MATRIX, a       )
Michigan limited liability          )
company,                            )
                                    )
            Plaintiff,              )
                                    )
      vs.                           ) Civil Action No. 09-542
                                    )
ADAM TECHNOLOGIES, INC., a          )
New Jersey corporation, and         )
FUTURE ELECTRONICS CORPORATION,     )
a Massachusetts corporation,        )
                                    )
            Defendants.             )

## MEMORANDUM

## I. INTRODUCTION

In this diversity action, Plaintiff, Jordan Acquisitions
Group LLC, asserts claims against Defendants, Adam Technologies,
Inc. (individually, "Adam Technologies") and Future Electronics
Corporation (individually, "Future Electronics"), for intentional
breach of contract (Count I), breach of contract (Count II),
breach of express warranties (Count III) and breach of implied
warranties (Count IV).  Defendants have filed motions to dismiss
Plaintiff's complaint on various grounds under Fed.R.Civ.P. 12(b)
or, in the alternative, for a·more definite statement under
Fed.R.Civ.P. 12(e).  For the reasons set forth below, Defendants'
motions will be granted in part, denied in part and the case
transferred to the United States District Court for the District
of Massachusetts.

## II. **FACTUAL ALLEGATIONS**

In summary, Plaintiff's complaint alleges the following facts:

Plaintiff is a Michigan limited liability company with a principal place of business in Export, Pennsylvania.  Plaintiff develops and manufactures microprocessor-based, applied, networkable controllers which are used in a broad range of applications including building control products.  (Complaint, ¶¶ 1, 7).

Adam Technologies is a New Jersey corporation with a principal place of business in Union, New Jersey.  Adam Technologies manufactures advanced interconnect products including plastic leaded chip carrier sockets, commonly referred to as "chip carriers."  Among the chip carriers manufactured by Adam Technologies are chip carriers bearing product numbers PLCC-52-AT and PLCC-68-AT.  (Complaint, ¶¶ 2, 8-9).

Future Electronics is a Massachusetts corporation with a principal place of business in Bolton, Massachusetts.  Future Electronics markets and distributes semiconductors and passive, interconnect and electro-mechanical products including Adam Technologies' PLCC-52-AT and PLCC-68-AT chip carriers.  (Complaint, ¶¶ 3, 10).

Defendants published a product data sheet for the PLCC-52-AT and PLCC-68-AT chip carriers.  The product data sheet set forth

2

specifications which Defendants knew purchasers would justifiably rely upon including a representation that the chip carriers' operating temperature range was -55°C to +105°C. (Complaint, ¶ 12, Exhibit A).

In and after 2006, Plaintiff purchased a significant number of Adam Technologies' PLCC-52-AT and PLCC-68-AT chip carriers from Future Technologies. Plaintiff installed the chip carriers in its building control products and did so in reliance on Defendants' express warranty in the product data sheet that the PLCC-52-AT and PLCC-68-AT chip carriers would operate within a temperature range of -55°C to +105°C. The chip carriers were installed in Plaintiff's building control products in conformity with Defendants' product data sheet specifications and sold to its customers. (Complaint, ¶¶ 15-17).

The PLCC-52-AT and PLCC-68-AT chip carriers installed in Plaintiff's building control products failed to perform as expressly and impliedly warranted by Defendants in that they failed to operate within the represented temperature range of -55°C to +105°C and were otherwise defective. The failure of the chip carriers to perform as expressly and impliedly warranted by Defendants required Plaintiff to replace the defective chip carriers in hundreds of building controllers by re-manufacturing the controllers and replacing them in the field. (Complaint, ¶¶ 18-19).

3

Upon learning of the failure of the PLCC-52-AT and PLCC-68-AT chip carriers to perform as warranted, Plaintiff repeatedly requested assistance from Adam Technologies in determining the cause of the failures and the correct operating temperature range for the chip carriers.  Without knowledge of the manufacturing process for Plaintiff's building control products or the manner in which the chip carriers were installed, used or maintained, Adam Technologies initially responded to Plaintiff's request for assistance with the unfounded contention that the chip carrier failures resulted from soldering during the installation process. Thereafter, Adam Technologies failed to respond to Plaintiff's requests for assistance and failed to cure or remedy the defective PLCC-52-AT and PLCC-68-AT chip carriers.  (Complaint, ¶¶ 20-21).

Adam Technologies' unfounded contention concerning the cause of the chip carrier failures, its failure to respond to Plaintiff's requests for assistance and its refusal to cure or remedy the defective chip carriers forced Plaintiff to incur substantial costs and delay to investigate the origin and cause of, develop a remedy for, and correct, the chip carrier failures. (Complaint, ¶ 22).

4

**III. STANDARD OF REVIEW**

A motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.*, whether in personam jurisdiction actually lies. Once the defense has been raised, the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir.1984).

Traditionally, when deciding a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3), a court must accept as true the allegations in the complaint, although the parties may submit affidavits to support their positions. In a motion to dismiss for improper venue, the defendant, as the moving party, bears the burden of showing that venue is improper. Banc Auto, Inc. v. Dealer Services Corp., No. 08-3017, 2008 WL 4055830, at *2 (E.D.Pa. Aug. 28, 2008).

When presented with a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept the allegations in the complaint as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading of the

5

allegations indicates that relief may be warranted. Umland v. PLANCO Financial Service, Inc., 542 F.3d 59, 64 (3d Cir.2008). In ruling on a Rule (12)(b)(6) motion, the Court may consider (a) documents attached to or submitted with the complaint, (b) documents whose contents are alleged in the complaint and whose authenticity no party questions but which are not physically attached to the pleading, and (c) documents that the defendant attaches to the motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claims. Pryor v. National Collegiate Athletic Assoc., 288 F.3d 548, 559-60 (3d Cir.2002).

Finally, under Fed.R.Civ.P. 12(e), a party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion, which must be made before filing a responsive pleading, must point out the defects complained of and the details that need to be pleaded to enable the answering party to respond. The need for a Rule 12(e) motion should arise infrequently due to the liberal pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure. "Only when the pleading is so vague or ambiguous that the opposing party cannot respond, even with simple denial, in good faith without prejudice to itself is it appropriate for the Court to grant a motion under Rule 12(e)."

6

Trustees of the National Elevator Indus. Pension, Health Benefit
and Educ. Funds v. Continental Elevator Co., Inc., No. 98-5311,
1999 WL 305370, at *5 (E.D.Pa.May 12,1999)(internal quotations
omitted).

**IV. DISCUSSION**

**Personal Jurisdiction**

Under Fed.R.Civ.P. 4(e), a district court may assert
personal jurisdiction over a nonresident defendant to the extent
allowed under the law of the state where the district court sits.
In Pennsylvania, a court may exercise jurisdiction over a
nonresident defendant "to the fullest extent allowed under the
Constitution of the United States and may be based on the most
minimum contact with this Commonwealth allowed under the
Constitution of the United States."  42 Pa.C.S.A. § 5322(b).
Therefore, the reach of the Pennsylvania statute is coextensive
with the due process clause of the United States Constitution.

In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286
(1980), the Supreme Court noted that under the due process
clause, a court may not exercise personal jurisdiction over a
nonresident defendant unless there are certain minimum contacts
between the defendant and the forum state.  In determining
whether this standard has been met, the Supreme Court held that
in order for a nonresident defendant to be subject to the
jurisdiction of the court, it must have purposefully availed

itself of the privilege of acting within the forum state.  Id. at 295.  Stated differently, a court must determine whether "the quality and nature of the defendant's activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state."  Kulko v. Superior Court of California, 436 U.S. 84, 92 (1978), quoting, International Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1940).

In response to Defendants' motions to dismiss for lack of personal jurisdiction, Plaintiff submitted affidavits by Paul T. Jordan, its Chief Technology Officer, concerning Defendants' contacts with Pennsylvania.  In relevant part, Mr. Jordan avers that, beginning in 2006, Plaintiff purchased chip carriers manufactured and marketed by Adam Technologies and distributed by Future Electronics; that Adam Technologies marketed the chip carriers in Pennsylvania through its internet presence and other actions; that Future Electronics delivered the chip carriers to Plaintiff in Pennsylvania; that Future Electronics sent the invoices for the sales of the chip carriers to Plaintiff in Pennsylvania; that Plaintiff paid Future Electronics' invoices from its offices in Pennsylvania; and that Plaintiff installed the chip carriers purchased from Future Electronics in building control products at its factory in Pennsylvania.  (Document No. 23-4 and Document No. 26, Exhibit B).

8

Based on the uncontroverted affidavits of Mr. Jordan, it is clear that Defendants have purposefully availed themselves of the privilege of doing business in Pennsylvania. Under the circumstances, Plaintiff has met its burden of establishing this Court's in personam jurisdiction over Defendants and the motions to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) will be denied.

**Intentional Breach of Contract**

As noted earlier, Count I of Plaintiff's complaint asserts a claim against Defendants for intentional breach of contract. The relief requested by Plaintiff in connection with Count I includes exemplary and punitive damages.[1]  Defendants have moved to dismiss Count I, including the request for exemplary and punitive damages, for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). In response, Plaintiff has indicated that it does not oppose Defendants' motions to dismiss in this regard. (Document No. 23, p. 2 n.1, Document No. 24, p. 3 n.1). Accordingly, Count I of the complaint will be dismissed, including the request for exemplary and punitive damages.

---

[1]Plaintiff's claim for intentional breach of contract in Count I of the complaint is identical to its claim for breach of contract in Count II with the exception of the request for exemplary and punitive damages in Count I.  (Complaint, ¶¶ 26-28, 30-32).

**Forum Selection Clause/Venue**

Section 11(a) of the Terms & Conditions on the reverse side
of the invoices issued to Plaintiff by Future Electronics in
connection with Plaintiff's purchases of the allegedly defective
chip carriers provides for resolution of all disputes, claims or
controversies arising out of the transactions in a state or
federal court located in the Commonwealth of Massachusetts.
(Document No. 13-2).[2]  Relying on this forum selection clause,
Defendants seek dismissal of Plaintiff's complaint under
Fed.R.Civ.P. 12(b)(3) and 12(b)(6) for improper venue.

_____

[2]In ruling on Defendants' motions to dismiss, Plaintiff
asserts that the Court may not consider the Terms & Conditions
applicable to the contract between Plaintiff and Future
Electronics, which are attached to Future Electronics' motion to
dismiss as Exhibit A, because its claims are not based on a
breach of the contract with Future Electronics but, rather, on
representations in the product data sheet published by Defendants
for the allegedly defective chip carriers.  The Court finds this
argument disingenuous.  Plaintiff's contract with Future
Electronics is referred to in the complaint and is an integral
part of its claims in this case.  Moreover, Paul T. Jordan,
Plaintiff's Chief Technology Officer, acknowledges in an
affidavit attached to Plaintiff's brief in opposition to Future
Electronics' motion to dismiss that the Terms & Conditions were
set forth on the reverse side of Future Electronics' invoices.
(Document No. 23-4).  Under the circumstances, the Court is not
precluded from considering the Terms & Conditions in ruling on
the motions to dismiss.  In re Rockefellor Sec. Lit., 184 F.3d
280, 287 (3d Cir.1999)(In ruling on a Rule 12(b)(6) motion to
dismiss, the district court may consider documents integral to or
explicitly relied upon in the complaint); Pension Benefit
Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d
1192, 1196 (3d Cir.1993)(A court may consider an undisputedly
authentic document which a defendant attaches as an exhibit to a
motion to dismiss if plaintiff's claims are based on that
document).

10

With respect to Defendants' reliance on Fed.R.Civ.P.
12(b)(3) as a basis for dismissing Plaintiff's complaint for
improper venue based on the forum selection clause, in a
diversity case, such as this one, whether venue is proper is
determined by the federal venue statute, not the existence of a
forum selection clause. Stewart Org., Inc. v. Ricoh Corp., 487
U.S. 22, 28-29 n.8 (1988); Barbuto v. Med. Shoppe Int'l, 166
F.Supp.2d 341, 347-48 (W.D.Pa.2001). Accepting the allegations
of the complaint concerning the events and omissions giving rise
to Plaintiff's claims against Defendants as true, it is clear
that venue lies in the Western District of Pennsylvania where
Plaintiff resides, Defendants transacted business and events
giving rise to Plaintiff's claims occurred. See 28 U.S.C.
§ 1391(a)(2). Thus, Fed.R.Civ.P. 12(b)(3) does not provide a
basis for dismissing this case on the ground of improper venue.

Turning to the motions to dismiss for improper venue under
Fed.R.Civ.P. 12(b)(6), when the parties' agreement contains a
valid forum selection clause designating a particular forum for
settling disputes arising out of their contract, a Rule 12(b)(6)
dismissal is a permissible means of enforcing that forum
selection clause. Salovaara v. Jackson Nat'l Life Ins. Co., 246
F.3d 289, 298 (3d Cir.2001). With respect to Adam Technologies'
Rule 12(b)(6) motion to dismiss for improper venue, as noted by
Plaintiff, Adam Technologies was not a party to its contracts

with Future Electronics.  Therefore, Adam Technologies may not
rely on the forum selection clause in Future Electronics'
invoices to support a motion to dismiss for improper venue under
Fed.R.Civ.P. 12(b)(6).  (Document No. 24, pp. 3-4, 8-10).

     As to Future Electronics' motion to dismiss for improper
venue under Fed.R.Civ.P. 12(b)(6), a district court sitting in
diversity must determine the effect to be given a contractual
forum selection clause by reference to federal not state law.
Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir.1995).
Under federal law, forum selection clauses are prima facie valid
and should be enforced unless enforcement is shown by the
resisting party to be unreasonable under the circumstances.  A
forum selection clause is unreasonable where the plaintiff can
make a strong showing that the selected forum is "so gravely
difficult and inconvenient that he will for all practical
purposes be deprived of his day in court," or a strong showing
that the forum selection clause was procured through "fraud or
overreaching," or that enforcement of the forum selection clause
would run counter to a strong public policy of the forum where
the lawsuit was brought.  M/S Bremen v. Zapata Off-Shore Co., 407
U.S. 1, 10, 15, 18 (1972).

     In the present case, Plaintiff does not claim that it will
be deprived of its day in court due to grave difficulty or
inconvenience if the forum selection clause in the Terms &

                              12

Conditions applicable to its purchases of Adam Technologies' chip carriers from Future Electronics is enforced, or that the forum selection clause was procured through fraud or overreaching, or that enforcement of the forum selection clause would violate a strong public policy of the Commonwealth of Pennsylvania. Rather, Plaintiff contends that the forum selection clause is invalid because it was inconspicuous having been set forth in boilerplate, fine print on the reverse side of the invoices from Future Electronics and because it did not knowingly or voluntarily consent to the exclusive jurisdiction of a Massachusetts court.  After consideration, the Court concludes that these contentions are insufficient to preclude enforcement of the forum selection clause in Future Electronics' invoices.

In Wilson of Wallingford, Inc. v. Reliable Data Systems, Inc., No. 95-6686, 1995 WL 734232, (E.D.Pa. Dec. 5, 1995), the plaintiff sued the defendant in the United States District Court for the Eastern District of Pennsylvania over a contract signed by the parties.  The defendant moved to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, to transfer the case to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a), based on a forum selection clause contained in the contract.  The plaintiff opposed the motion arguing that the forum selection clause was invalid because its terms were unfair

13

and unconscionable, its president did not read or bargain for the
forum selection clause, and it did not receive consideration for
the forum selection clause.  In rejecting these arguments and
transferring the case to the District of Maryland, the district
judge stated:

                              *    *    *

A. Validity of the forum selection clause

     I turn first to the question of the clause's validity.
Wilson does not allege fraud with respect to the forum
selection clause itself or that its enforcement would impose
unreasonable restraints or burdens on it.  Instead, as
mentioned, Wilson contends that its president neither read
nor bargained for this term, that Wilson received no
consideration for it and that it is unconscionable.

     Mr. Wilson's failure to read the forum selection clause
does not render it invalid.  Because the law does not
require parties actually to read or bargain over each term
of a contract for it to be enforceable, the critical inquiry
is whether the provision had been reasonably communicated by
the agreement, not whether the party actually read it or
bargained over it.  Marek v. Marpan II, Inc., 817 F.2d 242
(3rd Cir.1987).  See also Lambert v. Kysar, 983 F.2d 1110,
1119-20 (1st Cir.1993)("Any alleged overreaching must be
based on something more than the mere fact that the clause
was a 'boilerplate' provision printed on the back of a form
contract.").  The language of the front side of the contract
clearly communicates the existence of binding terms on its
reverse side, which include the forum selection clause.

     Nor is the forum selection clause facially
unconscionable or rendered so by Mr. Wilson's failure to
read it.  Wilson provides no legal or factual basis for its
claim that a routine forum selection clause negotiated
between two businesses is unconscionable.  To the contrary,
forum selection clauses are presumptively valid.  Zapata,
407 U.S. at 9-10.  Failure to negotiate does not render an
otherwise valid forum selection clause unconscionable.
Richardson Greenshields Securities, Inc. v. Metz, 566
F.Supp. 131, 133 (S.D.N.Y.1983).  See also Hodes v. S.N.C.
Achille Lauro ed Altri-Gestione, 858 F.2d 905, 913 (3rd

                                14

Cir.1988)(rejecting unequal bargaining power challenge to forum selection clause), <u>cert</u>. <u>dismissed</u>, 490 U.S. 1001 (1989).

    Wilson's argument that it received no consideration for this term is also without merit.  A party is presumed to have received appropriate consideration, in the form of a lower price, for a forum selection clause.  This presumption applies even where the party did not specifically negotiate that particular term.  <u>Id</u>. (citations omitted).  I thus find the forum selection clause valid.

                        *    *    *

1995 WL 734232, *1-2.[3]

    Although the Court concludes that the forum selection clause

set forth in the Terms & Conditions of Future Electronics'

invoices is valid and enforceable, the Court declines to grant

Future Electronics' motion to dismiss for improper venue.

Instead, Plaintiff's complaint will be transferred to the United

States District Court for the District of Massachusetts.

<u>Salovaara v. Jackson Nat'l Life Ins. Co.</u>, 246 F.2d 289, 299 (3d

Cir.2001)("[A]s a general matter, it makes better sense, when

_____

    [3]<u>See</u> <u>also</u> <u>De Lage Landen Financial Services, Inc. v. Rasa Floors, L.P.</u>, No. 08-533, 2008 WL 4822033, at *5 (E.D.Pa. Nov. 4, 2008) ("... Rasa cannot escape the effect of the clause because it was unaware of the clause, as ignorance of a forum selection clause does not necessarily render the clause invalid under the test, absent evidence of fraud."); <u>Hall v. Ski Shawnee, Inc.</u>, No. 06-275, 2006 WL 2869528, at *3, (E.D.Pa. Oct. 4, 2006) ("Plaintiffs do not suggest that the contract or its forum selection clause was procured by fraud or overreaching, or that it violates public policy.  Nor have Plaintiffs shown that the selected forum is so inconvenient as to be unreasonable.  Plaintiffs' suggestion that they did not assent to the inclusion of the forum selection clause is unpersuasive.  Courts have repeatedly upheld and enforced forum selection clauses in similar situations.").

venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss."); Pentecostal Temple Church v. Streaming Faith, LLC, No. 08-554, 2008 WL 4279842 (W.D.Pa. Sept. 16, 2008); Hall v. Ski Shawnee, Inc., No. 06-275, 2007 WL 2869528, at *4 (E.D.Pa. Oct. 4, 2006)("Generally, transfer to the proper forum is preferable to outright dismissal because it avoids repetitive motion practice and unnecessary costs.").

The Court's decision to transfer Plaintiff's complaint to the District of Massachusetts, despite the inapplicability of the forum selection clause to the claims asserted against Adam Technologies in the complaint, is based on Plaintiff's request in its brief in opposition to Adam Technologies' motion to dismiss for improper venue. Specifically, in the event the Court concluded that the forum selection clause in Future Electronics' invoices is valid and enforceable, Plaintiff requested the transfer of its complaint to the District Court of Massachusetts. (Document No. 24, pp. 4, 10).

## Breach of Implied Warranties/Jury Trial Demand/More Definite Statement

In light of the Court's conclusion that Plaintiff's complaint should be transferred to the District of Massachusetts, Defendants' motions to dismiss Plaintiff's claim for breach of implied warranties (Count IV), motions to strike Plaintiff's jury

trial demand, and motions for a more definite statement under
Fed.R.Civ.P. 12(e) will be denied.  The denial, however, is
without prejudice to Defendants' right to renew these motions in
the transferee forum.

_William L. Standish_
William L. Standish
United States District Judge

Date: August *11*, 2009

17